IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


ROBERT LAVELLE FREEMAN,
      Petitioner,

vs.                       Case No.:  3:18cv96/LAC/EMT

FLORIDA COMMISSION ON OFFENDER
REVIEW, et al.,
      Respondents.
_____/

## **<u>REPORT AND RECOMMENDATION</u>**

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Petitioner's habeas claims concern state court proceedings in which Petitioner sought review of the revocation of his conditional release supervision by Respondent Florida Commission on Offender Review ("FCOR"), formerly the Florida Parole Commission.  The FCOR filed a Response to the § 2254 petition, with relevant portions of the state court record (ECF No. 13).[1]  At the court's direction, the FDOC filed supplemental argument on the issue of exhaustion/procedural default (*see* ECF Nos. 17, 20).  Petitioner filed a reply to the FCOR's Response and supplemental argument (*see* ECF No. 26).

---

[1] Respondent Secretary of the Florida Department of Corrections ("FDOC"), filed a Limited Response noting that Petitioner's habeas claims fall within the purview of the FCOR, and that the FDOC Secretary is named solely as Petitioner's custodian (ECF No. 12).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).   After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.   It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

Petitioner was convicted by a jury in the Circuit Court in and for Orange County, Florida, Case No. CR92-266, of one count of sexual battery (*see* ECF No. 12 at 10–13).[2]   On September 18, 1992, the court sentenced Petitioner as a habitual violent felony offender to thirty (30) years in prison, with a 15-year minimum mandatory and pre-sentence jail credit of 209 days (*id.*).

---

[2] The court refers to the page numbers automatically assigned by the court' electronic filing system, rather than the page numbers of the original documents.

On April 30, 2012, Petitioner was released from FDOC custody on conditional release supervision, administered by the FCOR, with his supervision to expire on February 14, 2022 (ECF No. 13, Ex. 5, attached Ex. B).

On April 8, 2016, the FCOR issued a warrant for Petitioner's arrest for violating the terms of his conditional release, specifically, Condition 7 of the Certificate of Conditional Release and Terms and Conditions of Supervision, which required Petitioner to obey all laws (ECF No. 13, Ex. 5, attached Exs. C, D).  The alleged violation was based upon Petitioner's leaving the scene of an accident causing property damage in Floyd County, Georgia on October 5, 2015, for which he was charged with misdemeanor hit and run (*see id.*).  On June 10, 2016, Petitioner waived his right to a violation hearing and his right to be represented by an attorney (*see* ECF No. 13, Ex. 5, attached Exs. D, F).  On July 13, 2016, the FCOR revoked Petitioner's conditional release supervision, effective May 4, 2016, and ordered him returned to FDOC custody to serve the remainder of his sentence (ECF No. 13, Ex. 5, attached Ex. E; ECF No. 12, attached Affidavit of Stacey Haynes).  The FCOR considered, but denied, an award of credit for the time Petitioner was out of FDOC custody on

conditional release supervision (from April 30, 2010, to May 4, 2016) (ECF No. 13, Ex. 5, attached Ex. E).[3]

On October 25, 2016, Petitioner filed a petition for writ of habeas corpus in the Circuit Court in and for Santa Rosa County, Florida (the county where Petitioner was incarcerated), where the court assigned Case No. 2016-CA-844 (ECF No. 13, Ex. 1). Petitioner filed a motion for appointment of "appellate" counsel (ECF No. 13, Ex. 2). The FCOR filed a Response to the state habeas petition (ECF No. 13, Ex. 5). Petitioner filed a Reply and a Supplemental Reply (ECF No. 13, Exs. 6, 11).  On March 3, 2017, the state circuit court denied the habeas petition and denied all pending motions as moot (ECF No. 13, Ex. 11).  Petitioner "appealed" the decision to the Florida First District Court of Appeal ("First DCA"), Case No. 1D17-1089 (ECF No. 13, Ex. 12).  Petitioner filed a motion for appointment of counsel (*see* ECF No. 13, Ex. 14).  The First DCA noted that the order which Petitioner sought to appeal appeared to be reviewable by petition for writ of certiorari rather than by appeal, and directed Petitioner to file a petition for writ of certiorari (*see id.*).  The court also denied Petitioner's motion for appointment of counsel (*see id.*).  Petitioner filed a

---

[3] Pursuant to Florida Statutes § 944.28(1), the FDOC forfeited all of the gain-time applied to Petitioner's sentence prior to his release on conditional release supervision (*see* ECF No. 12, Haynes Aff.).

petition for writ of certiorari on May 15, 2017 (ECF No. 13, Ex. 15). The First DCA

denied the petition per curiam without written opinion on October 19, 2017 (ECF No.

13, Ex. 20). *Freeman v. Fla. Comm'n on Offender Review*, 236 So. 3d 341 (Fla. 1st

DCA 2017) (Table). The mandate issued November 16, 2017 (*see id.*).

Petitioner filed the instant federal habeas action on January 8, 2018 (ECF No.

1).

II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody

pursuant to 28 U.S.C. § 2254. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue presented in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for

purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court holdings. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the

federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's holdings. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on an unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1).

The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claim.

III.   PETITIONER'S CLAIM

Petitioner presents one claim in his § 2254 petition:

Ground One: "Petitioner is illegally detained without due process of law and was denied counsel at trial and appellate levels."

(ECF No. 1 at 5). Petitioner's claim has several sub-claims, including an ADA claim, a substantive due process/sufficiency of the evidence claim under the Fifth and Fourteenth Amendments, a procedural due process claim under the Fifth and Fourteenth Amendments, and a right-to-counsel claim under the Sixth and Fourteenth Amendments (*id.* at 5–9). The court will address each sub-claim in turn.

A.   ADA Claim

Petitioner claims that the revocation violated his rights under the Americans with Disabilities Act ("ADA") (ECF No. 1 at 9).  The FCOR contends Petitioner's ADA claim is unexhausted and without merit (ECF No. 13 at 4–5, 6–7).

A habeas petition is the appropriate vehicle to bring challenges to the validity of a conviction and sentence.  Petitioner's claim that the FCOR discriminated against him during the revocation proceeding because of his physical, mental, and intellectual disabilities is properly raised and remedied through an independent civil cause of action, not a habeas proceeding.  *See, e.g.*, *Gorrell v. Hastings*, 541 F. App'x 943, 945 (11th Cir. 2013) (unpublished but recognized as persuasive authority) (inmate's challenge to disciplinary proceeding, which resulted in loss of good-conduct time, on the ground that prison officials unlawfully took disciplinary action against him on the basis of his disability, in violation of the ADA, was not properly raised in habeas corpus action).

Additionally, Petitioner did not exhaust an ADA claim in the state courts.  It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner exhaust available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby

---

[4] Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the

giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365–66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277–78.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  Under such circumstances, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Id.* at 1303.

---

State; or
      (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Here, Petitioner asserted an ADA claim in his state habeas petition (*see* ECF No. 13, Ex. 1 at 11).  However, he did not present the claim to the First DCA in his petition for certiorari (*see* ECF No. 13, Ex. 15).  Petitioner may not seek a second review of the circuit court's order denying his state habeas petition. Therefore, Petitioner's ADA claim is unexhausted and procedurally defaulted.

To overcome a procedural default, the petitioner must show cause for the default and prejudice resulting therefrom, or that the federal court's failure to reach the merits of the claim would result in a fundamental miscarriage of justice.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).

In Petitioner's reply, he appears to argue that Investigator Braxton caused any procedural default, because Braxton "made the presenting of the claims almost impossible" by interfering with Petitioner's constitutional right to counsel (ECF No.

26 at 7–8). Petitioner's "cause" argument fails, because Petitioner presented his ADA claim to the state circuit court (in his state habeas petition) <u>after</u> Investigator Braxton's alleged interference with Petitioner's right to counsel.  Since Braxton's conduct obviously did not interfere with Petitioner's presenting his ADA claim to the state circuit court, and Petitioner does not allege any intervening conduct between the state circuit court proceedings and the review proceeding in the First DCA (where the procedural default occurred), Petitioner cannot show that Braxton caused Petitioner's failure to present the ADA claim to the First DCA.

Petitioner's failure to complete one round of state court review of his ADA claim, and Petitioner's failure to show he is entitled to federal review of his ADA claim through any recognized exception to the procedural bar, renders his claim procedurally barred in this federal habeas proceeding.

B.    Sufficiency of the Evidence/Substantive Due Process Claim

Petitioner alleges the Florida statutes governing conditional release supervision provide for the revocation of conditional release upon a releasee's arrest for a felony, not a misdemeanor, *see* Florida Statutes §§ 947.1405, 947.141, 947.146(10) (ECF No. 1 at 5–6).  Petitioner alleges he was arrested for allegedly committing a misdemeanor offense in Georgia (*id.*).  Petitioner contends his arrest for a misdemeanor offense was

not a sufficient basis for the FCOR's revocation decision under Florida's statutory provisions governing the Conditional Release program (*id.* at 5).

Respondent contends this is a purely state law issue which is not cognizable as a basis for federal habeas relief (ECF No. 13 at 14).

In Petitioner's state habeas petition, he argued that his arrest for a misdemeanor did not constitute a valid basis to revoke his conditional release, because Florida Statutes § 947.141 authorized the FCOR to revoke conditional release supervision upon the releasee's arrest on only a <u>felony</u> charge (*see* ECF No. 13, Ex. 1 at 8). Petitioner admitted he was charged with a misdemeanor offense of leaving the scene of an accident on October 5, 2015; that he was arrested for the charge and bonded out the next day; and that a jury trial was scheduled in the State of Georgia, County of Floyd, Case No. 16CR009998-JFL001, on September 9, 2016 (*see* ECF No. 13, Ex. 1 and attached Ex. E at 8–9). Petitioner alleged he had not admitted guilt to the charge, and that he maintained his innocence (*see id.* at 9–10).

With the FCOR's response to the state habeas petition, the FCOR filed a copy of the Certificate of Conditional Release and Terms and Conditions of Supervision provides, amended on February 26, 2014 (prior to the conduct which formed the basis for the revocation) (ECF No. 13, Ex. 5, attached Exhibit B). According to the

Certificate, Condition 7 provided, "You shall obey all laws, ordinances and statutory conditions of conditional release" (*id.*).

The FCOR also filed a copy of an Affidavit for Arrest and Warrant for Arrest issued by a judicial officer in Floyd County, Georgia, on October 6, 2015, alleging that on October 5, 2015, Petitioner struck another vehicle in the parking lot of Evans Store, causing damage to the other vehicle, and then left the scene before police arrived, which constituted a misdemeanor offense in violation of Georgia Statutes § 40-6-270 (ECF No. 13, Ex. 5, attached Ex. C). The arrest warrant was served upon Petitioner on March 27, 2016 (*id.*). The FCOR filed a copy of the Violation Report prepared by Correctional Probation Specialist Robert Knott, which described Knott's discovery of Petitioner's arrest, the alleged conduct underlying the arrest, and the fact that Petitioner bonded out of jail the day after his arrest (*id.*).

The FCOR also submitted a copy of the FCOR's Revocation of Conditional Release Order in which the FCOR determined that Probation Specialist Knott's report provided a sufficient basis to conclude that Petitioner willfully violated a substantial condition of his conditional release by violating Condition 7 by leaving the scene of an accident on October 5, 2015, in Floyd County, Georgia, in violation of Georgia law (ECF No. 13, Ex. 5, attached Ex. E).

The state circuit court determined that there was competent, substantial evidence to support the FCOR's determination that Petitioner's arrest for the "hit and run" offense in Georgia violated the terms and conditions of Petitioner's conditional release (ECF No. 13, Ex. 11).  In an unexplained decision, the First DCA denied Petitioner's petition for review of the circuit court's order (ECF No. 13, Ex. 20).

In *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 200 L. Ed. 2d 530 (2018), the Supreme Court held that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment or rejecting the same claim, federal habeas courts employ a "look through" presumption. The *Wilson* Court described this presumption as follows:  "We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning."  138 S. Ct. at 1192.

A claim of insufficiency of the evidence derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict.  In *Douglas v. Buder*, the Supreme Court held that a revocation of probation was invalid under the Due Process Clause where there was no evidentiary support for the state court's finding that the probationer violated the conditions of

probation.  412 U.S. 430, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973).  However, as recognized by the Eleventh Circuit, the Supreme Court has not established that due process in a revocation proceeding requires proof beyond a reasonable doubt that the parolee or conditional releasee committed the alleged violation.  *See United States v. Taylor*, 931 F.2d 842, 848 (11th Cir. 1991) (there is no requirement in a probation revocation hearing to prove beyond a reasonable doubt that the defendant committed the alleged acts; all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation).  Indeed, the Supreme Court has not specifically stated the standard of proof that must be met in revocation proceedings to satisfy the Due Process Clause.  *See, e.g.*, *Black* v. Romano, 471 U.S. 606, 615–16, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) ("*Bearden v. Georgia*[, 461 U.S. 660, 666, & n.7, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983)] recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution.  We have no occasion in the present case, however, to decide whether concerns for fundamental fairness prohibit the automatic revocation of probation in any other context.").

Here, looking through the First DCA's unexplained decision to the state circuit court's rationale, the undersigned concludes that the state court's adjudication of

Petitioner's substantive due process claim was not contrary to or an unreasonable application of clearly established Supreme Court law.  The only clearly established law on Petitioner's claim was the Supreme Court's holding in *Douglas*, that a revocation of supervision violated the Due Process Clause where there was <u>no</u> evidentiary support for finding that the defendant violated the conditions of his supervision.  Here, Probation Specialist Knott's report was some evidence that Petitioner violated Condition 7 of his supervision.

Additionally, the issue of whether conduct classified as a misdemeanor under state law constituted a failure to "obey all laws, ordinances and statutory conditions of Conditional Release," is purely a matter of state law.  Petitioner argued that Florida Statutes §§ 947.141, 947.1405, and 947.146(1) required commission of a felony as a basis for a conditional release revocation (*see* ECF No. 13, Ex. 1 at 8, Ex. 6 at 116).  However, the only provisions of § 947.141 which reference a felony are subsections (2) and (7).  Those provisions set forth the requirements for (1) a detention facility's notifying the FCOR when a releasee has been arrested on a felony charge, (2) a detention facility's detaining a releasee pending a decision by the FCOR whether to issue a warrant charging the releasee with violating the conditions of his release, and, if the FCOR issues a warrant, pending a revocation hearing, and (3) a law enforcement

officer's arresting a releasee without a warrant if the officer has probable cause to believe that a releasee has violated the conditions of his release by committing a felony. *See* Fla. Stat. § 947.141(2), (7). The statute does <u>not</u> provide that only a releasee's arrest on a felony, as opposed to a misdemeanor, provides a basis for revocation of supervision.

Petitioner's reliance upon Florida Statutes § 947.1405 was also misplaced, because that statute simply establishes the conditional release program. It provides, in relevant part, that an inmate who is sentenced as a habitual or violent habitual offender, as Petitioner was, shall, upon reaching the tentative or provisional release date established by the Florida Department of Corrections, be released under supervision "subject to specified terms and conditions . . . ." Fla. Stat. § 947.1405(2)(b), (c). The statute further provides that if the FDOC determines that the inmate is eligible for conditional release, the FCOR must enter an order establishing the length of supervision and the conditions attendant thereto. *See* Fla. Stat. § 947.1405(6). The statute does not mention the circumstances under which a releasee's supervision may be revoked.

The remaining statute upon which Petitioner relied, Florida Statutes § 947.146(10), governs the <u>control</u> release program, not the <u>conditional</u> release

program under which Petitioner was released. *See* Fla. Stat. § 947.146. Therefore, that statute is not applicable to Petitioner's case.

Petitioner failed to establish that the state court's adjudication of his substantive due process claim was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to federal habeas relief on his substantive due process challenge to the revocation of his conditional release supervision.

C.     Procedural Due Process and Right-to-Counsel Claims

Petitioner alleges that within one week of his extradition to the State of Florida, FCOR Investigator Matthew Braxton "forced" him to sign a waiver of his rights to a hearing and counsel (ECF No. 1 at 7–8). Petitioner alleges Investigator Braxton took advantage of his physical, mental, and intellectual disabilities resulting from a stroke he suffered in 2011, including seizures, memory loss, inability to read or write, limited ability to speak, difficulty with structuring his thoughts, and difficulty with comprehension (*id.* at 6–8). Petitioner alleges Mr. Braxton "coaxed" him into waiving his rights by telling him he "had no choice" and must sign all of the forms "to make everything go smoothly for him" (*id.* at 9). Petitioner contends the revocation of his conditional release supervision violated his procedural due process rights, because he

was not afforded a hearing, and his waiver of his right to a hearing was invalid (*id.* at 6–9).  He also claims he was denied his Sixth Amendment right to counsel in the revocation proceeding, and his waiver of counsel was invalid, because it was the product of coercion, deception, false pretense, and trickery by FCOR Investigator Braxton (*id.*).  Petitioner additionally claims he was denied his Sixth Amendment right to counsel in the certiorari proceeding in the First DCA (*id.*).

The FCOR contends Petitioner failed to fairly present a federal claim to the state courts; therefore, the claims are unexhausted and procedurally barred (ECF No. 20 at 2–9).  Respondent contends to the extent Petitioner claims he was denied a constitutional right to counsel in the certiorari proceedings in the First DCA, Petitioner had no constitutional right to counsel in those proceedings (ECF No. 13 at 14–15).

In Petitioner's reply, he contends he exhausted his issues in the state courts (*see* ECF No. 26 at 7).  Petitioner contends the state court's adjudication of the merits of claims was based upon an unreasonable determination of the facts, because the court was presented with a factual dispute and failed to conduct an evidentiary hearing and appoint counsel (*id.* at 2–7).  Petitioner requests that this federal court hold an evidentiary hearing on his claims (*id.* at 8).

In *Picard v. Connor*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner makes a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. *Anderson v. Harless*, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In *Anderson*, the Sixth Circuit Court of Appeals granted the habeas petition on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions

that properly explain state law." *Anderson*, 459 U.S. at 7.  On review by the Supreme

Court, the Court expressed doubt that a defendant's citation to a state-court decision

predicated solely on state law was sufficient to fairly apprise a reviewing court of a

potential federal claim merely because the defendant in the cited case advanced a

federal claim.  *Id.* at 7 & n.3.  Furthermore, the Court clarified that such a citation was

obviously insufficient when the record satisfied the federal habeas court that the

federal claim asserted in the cited case was not the same as the federal claim on which

federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement

in *Duncan v. Henry*, 513 U.S. 364 (1995).  The *Duncan* Court strictly construed the

exhaustion requirement so as to mandate that, if state and federal constitutional law

overlap in their applicability to a petitioner's claim, the petitioner must raise his issue

in terms of the applicable federal right in state court in order to obtain federal review

of the issue.  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim

that an evidentiary ruling at a state court trial denied him the due process of law

guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in

state court." *Duncan*, 513 U.S. at 365–66.

In *Baldwin v. Reese*, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004). The *Baldwin* court commented in dicta that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" 541 U.S. at 32. But with regard to this dicta, the Eleventh Circuit explained in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).

In Petitioner's state habeas petition, he asserted the following claim:

The Petitioner is being illegally detained by the Department of Corrections without due process of law guaranteed by Art. 1 § 9, Fla. Const., and the Fifth and Fourteenth Amendments to the U.S. Constitution, and was denied his right to counsel under the 6th Amendment to secure and protect those rights.

(ECF No. 13, Ex. 1). Petitioner argued that the FCOR's revocation decision violated Florida Statutes § 947.17, because that statute permitted revocation only upon a releasee's arrest for a felony, not a misdemeanor (*id.* at 7). Petitioner additionally argued the FCOR committed "violations of both due process and the denial of counsel to represent the petitioner" (*id.* at 8). Petitioner alleged FCOR Investigator Braxton "forced" him to "sign away his rights" to counsel and a revocation hearing, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, § 9 of the Florida Constitution (*id.* at 4, 10). Petitioner argued that "the improper conduct of state functionaries" and "government misconduct" violated his "Constitutional due process rights" and denied him "due process" (*id.* at 4–5). Petitioner argued that a denial of "due process" was fundamental error, and entitled him to release and "the dismissal of criminal charges (*id.*). Petitioner cited only one federal case in his state habeas petition, *United States*

*v. Russell*, 411 U.S. 423–32, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973), and he cited *Russell* for the proposition that "Government misconduct which violates Constitutional due process rights of a defendant requires the dismissal of criminal charges." (*id.* at 5).

In the FCOR's response to the habeas petition, the FCOR recognized that Petitioner was asserting both state and federal claims (*see* ECF No. 13, Ex. 5 at 45–53). The FCOR argued that Petitioner failed to demonstrate a violation of his rights to counsel and a revocation hearing under Florida case law and *Gagnon v. Scarpelli*, 411 U.S. 778, 787, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

In Petitioner's reply, he cited *Morrissey v. Brewer*, 408 U.S. 471, 488–89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) and *Gagnon*, which set forth the federal standards applicable to Petitioner's due process and right-to-counsel claims, and Petitioner argued that he did not knowingly and intelligently waive any rights (*see* ECF No. 13, Ex. 6 at 97, 100–02, 111, 114–15).

In the state circuit court's written decision denying Petitioner's habeas petition, the court expressly stated that it considered Petitioner's petition, the FCOR's response, and Petitioner's reply (ECF No. 13, Ex. 11 at 147). The court rejected

Petitioner's involuntary waiver claims (i.e., that his waiver of his rights to counsel and a hearing were involuntary) on procedural grounds as well as on the merits.

In Petitioner's certiorari petition filed in the First DCA, Petitioner presented several arguments, including, that the circuit court failed to address the legality of his waiver, and that the court violated his federal constitutional rights by failing to appoint counsel for him in the state habeas proceeding; and) (ECF No. 13, Ex. 15). In the FCOR's responsive brief, it argued the circuit court committed no error in denying Petitioner's claims (ECF No. 13, Ex. 18). In an unexplained decision, the First DCA denied Petitioner's petition for review of the circuit court's order (ECF No. 13, Ex. 20).

The undersigned concludes that Petitioner's state court pleadings afforded the state courts a meaningful opportunity to consider his federal constitutional claims. Therefore, the court rejects the FCOR's argument that Petitioner failed to satisfy the fair presentation requirement.

### 1.    Clearly Established Federal Law

"There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke*, 562 U.S. 216, 220, 131 S. Ct. 859, 178

L. Ed. 2d 732 (2011) (citation omitted). "When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures." *Id.*

In a parole revocation proceeding, the following minimum requirements of due process must be provided:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses . . . ; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey v. Brewer*, 408 U.S. 471, 488–89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). "These requirements in themselves serve as substantial protection against ill-considered revocation." *Gagnon v. Scarpelli*, 411 U.S. 778, 787, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). A revocation hearing does not "equate . . . to a criminal prosecution in any sense," *Morrissey*, 408 U.S. at 489, and thus, the full panoply of rights afforded to the criminal defendant are not afforded to one facing revocation.

With respect to the right to counsel, the Sixth Amendment provides that in all criminal prosecutions, "the accused shall enjoy the right . . . to have the Assistance of

Counsel for his defen[s]e." U.S. Const. amend. VI.  The right to counsel attaches in a criminal prosecution after the initiation of adversarial judicial proceedings.  *See Kirby v. Illinois*, 406 U.S. 682, 689–90, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972).  As the Supreme Court has explained, once attachment occurs, the accused is entitled to counsel during any "critical stage" of the post-attachment proceedings, and "what makes a stage critical is what shows the need for counsel's presence."  *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 212, 128 S. Ct. 2578, 171 L .Ed.2d  366 (2008).

Supreme Court precedents "have defined critical stages as proceedings between an individual and agents of the State (whether 'formal or informal, in court or out,' . . .) that amount to 'trial-like confrontations,' at which counsel would help the accused 'in coping with legal problems or . . . meeting his adversary.'"  *Rothgery*, 554 U.S. at 212 n.16 (internal citations omitted).  "Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel."  *Gardner v. Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) (citing *Mempa v. Rhay*, 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967)).

In *Mempa*, the Supreme Court determined that indigent defendants were entitled to the representation of counsel at probation revocation proceedings at which a recommendation was to be made about the length of sentence to be imposed as a result of the violation. 389 U.S. at 135–37. The Court opined that counsel's assistance was necessary to establishing the facts of the probation violation, introducing evidence of mitigating circumstances, and generally aiding and assisting the defendant in presenting his case as to the appropriate sentence. *Id.* at 135.

Subsequently in *Gagnon v. Scarpelli*, the Supreme Court distinguished *Mempa* because the probation revocation sentence to be served in the event of a violation in petitioner Gagnon's case had been established at the time of trial. 411 U.S. at 779–81. The Court stated:

> We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case by case basis in the exercise of a sound discretion by the State authority charged with the responsibility for administration of the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will be certain cases in which fundamental fairness—the touchstone of due process—will require the State provide at its own expense counsel for indigent probationers or parolees.
> . . . .
> It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process

requirements.  The facts and circumstances in preliminary and final
hearings are susceptible of almost infinite variation, and a considerable
discretion must be allowed the responsible agency in making the
decision.  Presumptively, it may be said that counsel should be provided
in cases where, after being informed of his right to request counsel, the
probationer or parolee makes such a request, based on a timely and
colorable claim (i) that he has not committed the alleged violation of the
conditions upon which he is at liberty; or (ii) that, even if the violation
is a matter of public record or is uncontested, there are substantial
reasons which justified or mitigated the violation and make revocation
inappropriate, and that the reasons are complex or otherwise difficult to
develop or present.  In passing on a request for the appointment of
counsel, the responsible agency also should consider, especially in
doubtful cases, whether the probationer appears to be capable of
speaking effectively for himself.  In every case in which a request for
counsel at a preliminary or final hearing is refused, the ground for refusal
should be stated succinctly in the record.

*Gagnon*, 411 U.S. at 790–91.

> 2.    Federal Review of State Court Decision

In Petitioner's state habeas petition, he argued that even though he initialed and

signed a Notice of Rights stating, "I hereby freely and voluntarily waive any right to

[a] violation hearing" and "I hereby knowingly and voluntarily waive any right to be

represented by an attorney," and even though he signed a Waiver of Conditional

Release Violation Hearing, his waivers of a revocation hearing and counsel were

invalid, because they were the product of coercion and deception by FCOR

Investigator Braxton.  Petitioner contended Braxton should have known, from his

independent observations during the course of their meeting, that Petitioner was not mentally capable of proceeding without counsel or waiving any rights.

Petitioner's affidavit, submitted with his state habeas petition, stated the following facts with respect to his interaction with FCOR Investigator Braxton when he signed the waiver paperwork:  (1) Petitioner told Braxton he could not understand what Braxton was telling him; (2) Braxton told Petitioner to "just sign here, here and initial here and here to make things to smoothly for me"; and (3) Braxton told him he "must" sign the Waiver of Conditional Release Violation Hearing form (ECF No. 13, Ex. 1, attached Appendix 1).[5]  Petitioner asserted Braxton failed to sign the Waiver of Conditional Release Violation Hearing form, and Braxton failed to complete the "Comments" section of the Conditional/Control Release Pre-Revocation Interview Notice of Rights form (id.).  Petitioner admitted he did not completely remember his interaction with Braxton—Petitioner stated he did not remember Braxton reading the Waiver to him, but he remembered Braxton pointed to a line and told him he "had to sign there" (id.).  Petitioner also offered alternative factual bases for his contention that his waivers were unknowing and unintelligent—he asserted, "I never was

---

[5] Petitioner's affidavit also included a description of what he told an inmate law clerk, three months after the FCOR issued its revocation decision, regarding his interview with Investigator Braxton, which is irrelevant.  And Petitioner included conclusory allegations that he was not aware of what he was signing, that he was not mentally competent to sign anything due to a prior stroke, and that Braxton took advantage of his disability and coerced and deceived him.

properly explained [sic] the options, or I could not comprehend what was explained to me" (*id.* (emphasis added)).

Petitioner attached copies of a Notice of Hearing on Conditional/Control Release Violation form, Conditional/Control Release Pre-Revocation Interview Notice of Rights form, and Waiver of Conditional Release Violation Hearing form (ECF No. 13, Ex. 1, attached Appendix 1, Exhibits A, B, C).  The Conditional/Control Release Pre-Revocation Interview Notice of Rights form included Petitioner's signature following this acknowledgment, "I acknowledge that I have read or have had the above read to me, and explained, and that I understand it.  I have made my election, and have so indicated by placing my initials in the appropriate space." (*id.*, Ex. A). Petitioner placed his initials in two spaces—one space next to the statement, "I hereby freely and voluntarily waive my right to said violation hearing," and the other space next to the statement, "I hereby knowingly and voluntarily waive my right to be represented by an attorney" (*id.*).  The top of the Notice of Rights notified Petitioner of the following:

1.    You are entitled to appear and speak in your own behalf and present documents at the conditional/control release violation hearing.

2.    You have a right to present evidence in your own behalf which includes the right to obtain witness(es) to appear in your behalf

and request that the Commission issue subpoenas for the attendance of those witness(es).

3.    You are entitled to have evidence that will be presented at the violation hearing disclosed to you prior to the hearing.

4.    You have the right to examine evidence to be used against you and to confront and cross examine adverse witness(es) who testify against you at your violation hearing.

5.    You have the right to be represented by counsel and under certain circumstances, counsel may be appointed to you if you are indigent.   Appointed counsel will be considered under the standards as set forth in the United States Supreme Court decision of <u>Gagnon vs. Scarpelli</u>.

6.    You have a right to receive fourteen (14) days advance written notice of the hearing.

7.    You may waive any and all of the above stated rights, or your may waive your right to a violation hearing.

(ECF No. 13, Ex. 1, attached Appendix 1, Exhibit A).  The "Comments" section of the copy of the form submitted by Petitioner was blank (*id.*).

The Waiver of Conditional Release Violation Hearing form submitted by Petitioner was signed and dated by Petitioner (ECF No. 13, Ex. 1, attached Appendix, Exhibit C).  By signing the form, Petitioner stated the following:  (1) he was waiving his violation hearing "freely and voluntarily, with full knowledge as to the consequences of his doing so," (2) his rights as set forth on the Notice of Hearing

were explained to him and he understood and waived them, (3) he understood he was waiving the requirement that the FCOR conduct a violation hearing, (4) he understood he may be found guilty of any violations indicated on the Notice of Hearing based upon the violation report and any other relevant documents or evidence, and that such violations constituted a willful violation of a substantial condition of his supervision, (5) he understood that even if pending criminal charges did not result in conviction, he may be found guilty of FCOR charges based on the same set of facts, (6) he understood he could withdraw the Waiver within fourteen days, and he acknowledged he received a withdrawal of waiver form, (7) he acknowledged that no promises, threats, or inducements were made or offered to cause him to sign the Waiver, and (8) he understood that the FCOR would decide whether to discharge him from supervision, reinstate his supervision, or revoke his supervision (ECF No. 13, Ex. 1, attached Appendix 1, Exhibit C).

The Notice of Hearing on Conditional/Control Release Violation form submitted by Petitioner notified him that he was charged with the following:

1.   Violated Condition 7 which states, "You shall obey all laws, ordinances and statutory conditions of Conditional Release," in that on or about October 5, 2015, in Floyd County, Georgia, he did unlawfully leave the scene of an accident, with said accident causing damage to property.

(ECF No. 13, Ex. 1, attached Appendix 1, Exhibit B). The form indicated that Petitioner waived a hearing (*id.*). The form included a place for FCOR Investigator Braxton to sign, but there was no signature (*id.*). The form also included a place for Petitioner's Jail Custodian or Designee to sign, acknowledging that he or she was notified by the FCOR of any violation hearing and that Petitioner would be available for any such hearing, but there was no signature (*id.*).

The evidence submitted by the FCOR with its response to Petitioner's state habeas petition also included copies of a Notice of Hearing on Conditional/Control Release Violation form, Conditional/Control Release Pre-Revocation Interview Notice of Rights form, and Waiver of Conditional Release Violation Hearing (ECF No. 13, Ex. 5, attached Exhibit D). Two of the three forms were different than the copies submitted by Petitioner. For example, the "Comments" section of the Conditional/Control Release Pre-Revocation Interview Notice of Rights form indicated that Petitioner was 48 years old, had a GED education, could read and write, had speech problems, did not have any emotional problems, took medications for seizures, blood pressure, and cholesterol, had a stroke in 2011, understood the revocation charge, had a pending criminal charge, and was not represented by counsel (*id.*). Additionally, the Notice of Hearing on Conditional/Control Release Violation

form included the signatures of Investigator Braxton and Petitioner's Jail Custodian

or Designee (*id.*).  The FCOR explained that the documents submitted by Petitioner

were not the "official or formal record submitted by Investigator Braxton as a

Commission record." (ECF No. 13, Ex. 5 at 47 n.1).  The FCOR explained:

> It is the practice of an investigator to take multiple copies of all
> necessary forms with them to notice an inmate of a violation hearing.
> The offender initials and signs, and the investigator signs, at least two
> copies of each form.  One form is left with the offender as his personal
> copy and the investigator makes the other form a part of the official
> record.

(ECF No. 13, Ex. 5 at 47 n.1).

The FCOR also submitted a Declaration of Matthew Braxton, signed under

penalty of perjury, which stated the following:

> 1.     My name is Matthew Braxton and I am competent to testify
> to the facts stated in this declaration and I have personal knowledge of
> these facts.  I have been employed by the Commission on Offender
> Review for six (6) years.  During this time, l have conducted numerous
> notification of rights and conducted numerous revocation hearings for
> releasees facing revocation proceedings.  Prior to my employment with
> the Commission on Offender Review, I was employed by the
> Department of Corrections as a Senior Classification Officer.
>
> 2.     On June 10, 2016, I met with offender Robert Freeman (DC
> 498270) ("'offender Freeman") at the Northwest Florida Reception
> Center, Chipley, Washington County, Florida, to notice him of his rights
> related to his then-pending conditional release revocation proceeding.
> I advised him of his rights and his options in the revocation proceeding,
> including his right to be represented by an attorney, if he otherwise

qualified for appointment of counsel, and his right to have an actual revocation hearing. I explained to offender Freeman the consequences of waiving his rights.

3.     During our June 10, 2016, meeting and discussions, I determined, based in part on discussions with and responses to my questions of him, offender Freeman, was forty-eight (48) years old, had earned a General Equivalency Diploma, could read and write, had no emotional or mental problems, and understood the charges against him. Offender Freeman affirmatively claimed to have no emotional problems [and] claimed no mental deficiencies. I also observed that offender Freeman had minor speech problems. Offender Freeman communicated to me that he was currently prescribed medications for seizures and blood pressure and cholesterol issues.

4.     I explained to offender Freeman that he had the option to have a hearing or to waive his hearing. After our discussions, offender Freeman elected to waive his right to be represented by counsel, even if he otherwise qualified for appointment of counsel. Offender Freeman also elected to waive his right to a conditional release violation hearing. Offender Freeman initialed the space on the Notice of Rights form indicating he waived both of these rights. I read to offender Freeman, specifically, the rights he initialed as waived on the Notice of Rights form. After offender Freeman elected to waive his right to a hearing, I read to offender Freeman the Waiver of Conditional Release Violation Hearing. Offender Freeman signed the Waiver of Conditional Release Violation Hearing in my presence. I clearly and certainly advised offender Freeman of his right to withdraw his waiver within fourteen (14) days and provided to offender Freeman a copy of the Withdrawal of Waiver of Conditional Release Violation Hearing for his consideration.

5.     Offender Freeman's decision to waive his right to be represented by counsel, if he would have otherwise qualified for appointment of counsel, and his decision to waive his right to an actual revocation hearing were absolutely his own. At no time did I force,

encourage, coerce, advise, suggest, or otherwise require offender Freeman to waive any right or sign or initial any waiver form.

6.      I have read the relevant portions of offender Freeman's Petition for Writ of Habeas Corpus, filed in Santa Rosa County Circuit Court under case number 2016-CA-000844. Offender Freeman's claims that I denied him counsel during his then-pending revocation proceedings, that I forced him to waive his right to counsel of his right to a hearing, or that I took advantage of any claimed medical or mental deficiency or infirmity of offender Freeman's in order to get him to waive any of his rights or sign any forms indicating such waivers is unequivocally false.  All decisions to waive were offender Freeman's own.  If offender Freeman had made the choice to have a violation hearing, I would have provided him that hearing.  If offender Freeman would have qualified for the appointment of counsel, I would have appointed him counsel.

(ECF No. 13, Ex. 5, attached Exhibit F).

The FCOR additionally submitted documents refuting Petitioner's self-serving assertion that, due to his stroke in 2011, he "cannot read or write or comprehend many simple things" and thus did not understand the waiver documents.  The FCOR submitted copies of two inmate requests authored by Petitioner before he was released on conditional release supervision, one dated December of 2009, prior to Petitioner's allegedly debilitating stroke in 2011, and the other dated January of 2012, after the stroke (*see* ECF No. 13, Ex. 5 at 48–49, attached Exhibit G).  The inmate requests bore the same handwriting and Petitioner's signature, and demonstrated that Petitioner had no problems with reading, writing, or basic comprehension (*id.*).

Petitioner did not submit any new evidence with his reply in the state habeas proceeding; instead he re-submitted copies of documents submitted by the FCOR, specifically, a copy of the Fulton County, Georgia arrest warrant, the conditional release violation report, and one page of the Certificate of Conditional Release and Terms and Conditions of Supervision (*see* ECF No. 13, Exs. 6, 7, 9, 10).

The state circuit court considered the evidence and denied Petitioner's habeas petition. The court determined that Petitioner failed to preserve for review the issue of the voluntariness of his waivers of counsel and a revocation hearing, because Petitioner failed to present the issue to the FCOR by submitting a withdrawal of his waivers to the FCOR as provided by the FCOR's procedural rules (ECF No. 13, Ex. 11). In a footnote, the state circuit court stated:

> Even if the claim were properly before the Court, it should be noted that the Commission has attached the affidavit of the investigator alleged to have procured an involuntary waiver from the Petitioner. Respondent's Exhibit F. The investigator's affidavit directly contrasts with Petitioner's account of events. It is "well settled that habeas corpus proceedings are historically informal and affidavits are permissible." Turiano v. Butterworth, 416 So. 2d 1261, 1263 (Fla. 4th DCA 1982); see also Bruce v. Carson, 489 So. 2d 1234. 1235 (Fla. 1st DCA 1986) (holding that in habeas corpus proceedings "affidavits were admissible since they were based on the personal knowledge of the affiants."). Based on the entirety of the record before it, the Court does not find probable cause to believe that Petitioner is being detained without lawful authority.

(ECF No. 13, Ex. 11 at 151).

Petitioner sought review of the circuit court's decision in the First DCA (ECF No. 13, Ex. 15).  He argued the following five points:  (1) the circuit court failed to address the issue that he was legally incompetent to waive any rights; (2) the court failed to rule on his motions to strike; (3) the court's determination that his arrest for a misdemeanor constituted a sufficient basis for the FCOR's revocation decision violated clearly established law; (4) the court violated his federal constitutional rights by failing to appoint counsel for him in the state habeas proceeding; and (5) the court employed the wrong standard of review (i.e., the court should have reviewed his claims de novo, instead of treating the proceeding as a "plenary appeal") (*id.*).

The FCOR did not argue the procedural, lack-of-preservation issue in its response; instead, the FCOR argued the circuit court committed no error in denying Petitioner's claims on the merits (ECF No. 13, Ex. 18).

In an unexplained decision, the First DCA denied Petitioner's petition for review of the circuit court's order (ECF No. 13, Ex. 20).

Section § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits."  *See Richter*, 562 U.S. at 99.  When a state court issues an order that summarily rejects without

discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits in the absence of any indication or state-law procedural principles to the contrary. *Id.* The presumption may be overcome when there is a reason to think some other explanation for the state court's decision is more likely. *Id.* at 99–100.

The same rule applies when the state court addresses some but not all of the federal claims raised by a defendant. When a federal claim has been presented to the state court, and the state court opinion addresses some but not all of defendant's federal claims, a rebuttable presumption arises on federal habeas review that state court adjudicated all of the federal claims on the merits. *See Johnson v. Williams*, 568 U.S. 289, 298, 133 S. Ct. 1088, 185 L. Ed. 2d 105 (2013).

Here, there is no indication that the First DCA's decision was based exclusively on the procedural, lack-of preservation issue. Indeed, the fact that the FCOR briefed only the merits of Petitioner's claims suggests that the First DCA's unexplained decision most likely relied on the circuit court's alternative merits adjudication. Therefore, the undersigned concludes that the First DCA adjudicated the merits of Petitioner's federal claims, and will thus determine whether Petitioner

has demonstrated that the state court's adjudication of his procedural due process and right-to-counsel claims were contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts based upon the evidence presented to the state court. *See Richter*, 562 U.S. at 100.

The state court reasonably determined that Petitioner failed to show that the waiver of his rights to counsel and a hearing was involuntary. Petitioner did not dispute that he initialed the Notice of Rights form and signed the Waiver of Conditional Release Violation Hearing form, thus acknowledging that he understood his rights, that no promises, threats, or inducements caused him to sign, and that he freely chose to waive his right to a hearing and to be represented by an attorney. Additionally, the state habeas court considered the sworn declarations of Petitioner and Investigator Braxton. Braxton's statements were factually specific and unequivocal, and were corroborated by relevant documents in the FCOR's official record. Whereas, Petitioner hedged on some of the facts, and admitted having an incomplete memory of his meeting with Braxton. Given this record, the state habeas court reasonably determined that Petitioner failed to show that his waivers were involuntary. *See Schriro v. Landrigan*, 550 U.S. 465, 476, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (state court's factual finding based on record material and transcripts

from the state courts was reasonable under § 2254(d)(2), despite the absence of an evidentiary hearing in state court); *Landers v. Warden*, 776 F.3d 1288, 1297–98 (11th Cir. 2015) (state habeas court's fact-finding procedure, resolving in former defense counsel's favor credibility dispute between defendant and former counsel on the basis of dueling affidavits, without an evidentiary hearing, was not so inadequate as to render its factual determinations "unreasonable," stripping them of deference under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and opening the door for de novo review and habeas relief; affidavits were of notably differing credibility, in that defendant's affidavits followed an identical structure and alleged only the barest factual skeleton needed to support an ineffective assistance claim, while counsel's affidavit described his alleged facts in great detail).

Additionally, with respect to procedural due process aspect of Petitioner's claim, the state court record demonstrates that the FCOR complied with the minimum due process requirements for revocation proceedings.

With respect to the right-to-counsel, as previously discussed the Constitution does not require the appointment of counsel to an indigent defendant in a conditional release revocation proceeding. Although *Gagnon* "presumed" that counsel should be provided in certain cases, Petitioner failed to make a showing, in state court, that his

case was one of those.  In state court, Petitioner did not allege that he made a request

for counsel (either to Investigator Braxton or the FCOR itself), let alone a request

"based on a timely and colorable claim (i) that he has not committed the alleged

violation . . .  or (ii) that, even if the violation is a matter of public record or is

uncontested, there are substantial reasons which justified or mitigated the violation

and make revocation inappropriate, and that the reasons are complex or otherwise

difficult to develop or present."  *Gagnon*, 411 U.S. at 790–91.

Considering that Petitioner was advised of his rights to counsel and a hearing;

that he waived these rights; and that he failed to proffer credible evidence that his

waivers were involuntary, the state court's adjudication of Petitioner's procedural due

process and right-to-counsel claims was not based upon an unreasonable

determination of the facts, or contrary to or an unreasonable application of clearly

established federal law.  *See, e.g.*, *Gaines v. Chairman, Fla. Parole Comm'n*, 745 F.

App'x 871 (11th Cir. 2018) (state habeas court reasonably found that petitioner

voluntarily waived his right to a revocation hearing; by initialing the Notice of Rights

form and signing the Waiver of Conditional Release Hearing form, petitioner

acknowledged he understood his rights, that no promises, threats, or inducements

caused him to sign, and that he freely chose to waive his right to a hearing; state

habeas court considered the declaration of the parole examiner, which the FCOR offered in opposition to petitioner's claim that his waiver was involuntary, wherein parole examiner stated that petitioner elected to waive his right to a hearing after the examiner explained to him the consequences of doing so, and examiner declared that petitioner's claim that he was promised reinstatement of conditional release was "absolutely false"; and Petitioner offered no evidence to refute  examiner's declaration).

IV.    EVIDENTIARY HEARING

As a final matter, although Petitioner requests an evidentiary hearing on his § 2254 petition (*see* ECF No. 1 at 19), he is not entitled to one.  When a state court has adjudicated the claims presented by the petitioner, an evidentiary hearing may only be granted if the federal court concludes that the state court unreasonably applied clearly established federal law or made an unreasonable determination of fact.  *See Landers*, 776 F.3d at 1294–95.  Here, an evidentiary hearing is not necessary because the state habeas court did not unreasonably apply federal law or make unreasonable findings of fact.

V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 580 U.S.—, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**; and

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 19<u>th</u> day of July 2019.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**